# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 19, 2021

Lyle W. Cayce
Clerk

No. 20-60730

United States of America,

*Plaintiff—Appellee*,

*versus*

Taryn Goin Naidoo,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:18-CR-141-1

Before King, Smith, and Haynes, *Circuit Judges*.

Per Curiam:

Taryn Goin Naidoo was convicted of three counts of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) & (b)(2). On appeal, Naidoo raises challenges related to the district court's evidentiary rulings, jury instructions, and sentencing. For the reasons that follow, we VACATE Naidoo's Count Two conviction and sentence under 18 U.S.C. § 2252(a)(4)(B) and (b)(2), and MODIFY the district court's judgment to impose only a $200 special assessment and a $10,000 assessment under the Justice for Victims of Trafficking Act. In all other respects, we AFFIRM.

No. 20-60730

## I.

Defendant-appellant Taryn Goin Naidoo was charged in a superseding indictment with three counts of possession of visual depictions involving the use of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B) & (b)(2). Count One related to Naidoo's possession of a sixteen-gigabyte SanDisk Micro SD card containing such images from on or about November 17, 2016 through on or about July 10, 2017. Count Two related to Naidoo's possession of a sixty-four-gigabyte Lexar Micro SD card containing such images on or about July 10, 2017. Count Three related to Naidoo's possession of a Western Digital My Passport external hard drive containing such images on or about October 4, 2018.

Prior to his trial, Naidoo's counsel attempted to exclude the admission of any sexually explicit material depicting minors, offering to stipulate that all relevant images were depictions of child pornography. The district court denied Naidoo's motion but cautioned that it would not "license[] the Government to overwhelm the jury with disturbing videos and images." At trial, over the defense's running objection, the court permitted the Government to present a set of forty-six images of child pornography retrieved from an HP laptop found in Naidoo's residence and representative samples of images retrieved from the SD cards and external hard drive. Notably, some of the images in these batches were duplications, thus demonstrating connections between the devices in Naidoo's residence. The Government was also permitted to show limited clips of three pornographic videos and to present story boards that demonstrated the overall contents of those three videos and one other.[1]

---

[1] A short video excerpt of this final video was, however, also entered into evidence.

No. 20-60730

Also prior to trial, Naidoo's defense counsel identified two mental health experts whom the defense intended to call to testify about Naidoo's mental state. The first expert, Dr. Criss Lott, was prepared to testify that Naidoo had no sexual arousal to children, knew it was wrong to engage in sexual activity with an underage person, and was sexually attracted to women. The second expert, Dr. Susan Niemann-Hightower, was prepared to testify that Naidoo was heterosexual, enjoyed watching "mainstream pornography involving consenting adults," and showed "no signs of atypical thoughts or deviant tendencies."[2] The district court granted the Government's motion to preclude the testimony, reasoning that, though the proffered testimony was potentially relevant to the issue of Naidoo's knowledge, it presented a special risk of jury confusion. The court made clear that its ruling "cut[] both ways" and the Government was also barred from offering a "contrary expert opinion" about Naidoo's sexual predilections. On the basis of this ruling, Naidoo objected at trial when the Government introduced evidence that he had accessed written stories online (referred to as the "Kristen stories") describing sexual encounters between minors and adults. The court overruled the objection.

Naidoo's trial ended on January 10, 2020, with a guilty verdict on all counts. With enhancements, the presentence investigation report calculated an offense level of 33, which—together with a criminal history category of

---

[2] At sentencing, Dr. Lott testified as to personality testing that he performed to assess whether Naidoo showed signs of psychopathy, as well as other assessments he performed. With regard to Naidoo's arousal to child pornography, Dr. Lott explained that his opinion "was strictly based on [Naidoo's] report to [him]." Dr. Niemann-Hightower also testified and explained that she only performed an assessment related to Naidoo's risk of hurting himself and did no forensic analysis. None of the experts performed any penile plethysmograph (PPG) tests designed to detect sexual deviancies, so we need not address whether any such PPG testing would have been more relevant than the opinions provided by these experts.

No. 20-60730

II—resulted in a sentencing range of 151 to 188 months. The district court sentenced Naidoo to three concurrent terms of 170 months' imprisonment, to be followed by 15 years of supervised release. As a special condition of supervised release, the court prohibited Naidoo "from using any Internet-capable device, or computer, . . . unless he is granted permission or authority in advance by the supervising U.S. Probation Officer." The court also imposed $32,000 in restitution, a $100 special assessment per count of conviction for a total of $300, a $5,000 assessment per count of conviction under the Justice for Victims of Trafficking Act ("JVTA") for a total of $15,000, and a $10,000 fine. This appeal followed.

## II.

Naidoo first challenges a variety of evidentiary rulings. These include the district court's decisions to (1) preclude testimony by Naidoo's experts, (2) admit images and videos of child pornography, and (3) admit evidence of pornographic stories viewed by Naidoo. We address each argument in turn, applying a deferential abuse of discretion standard of review. *See United States v. Guidry*, 456 F.3d 493, 501 (5th Cir. 2006) ("In a criminal case, we review the district court's evidentiary rulings under an abuse of discretion standard."); *see also United States v. Dixon*, 413 F.3d 520, 523 (5th Cir. 2005) ("We review a district court's decision to exclude expert testimony only for abuse of discretion.").

### A. Naidoo's Expert Testimony

Naidoo contends that his lack of motive to possess child pornography was central to his defense. Accordingly, he sought to introduce expert testimony that he had no sexual interest in children and thus lacked such a motive. However, Naidoo was precluded from doing so by the district court after it concluded that, under Federal Rule of Evidence 403, the probative value of such testimony was outweighed by the special risk of jury confusion.

Federal Rule of Evidence 403 provides that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues." A district court's decision under Federal Rule of Evidence 403 is reviewed with "'an especially high level of deference to' the district court, with reversal called for only 'rarely and only when there has been a clear abuse of discretion.'" *United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008) (quoting *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007)). Similarly, a trial court is afforded "'wide latitude' and 'broad discretion' to exclude expert testimony." *United States v. Reed*, 908 F.3d 102, 117 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 2655 (2019) and 139 S. Ct. 2658 (2019) (quoting *Williams v. Manitowoc Cranes, LLC*, 898 F.3d 607, 625 (5th Cir. 2018)). Accordingly, we "will not disturb the court's exercise of its discretion to exclude such testimony unless the exclusion was 'manifestly erroneous'—that is, unless it 'amounts to a complete disregard of the controlling law.'" *Id.* Any such error in admitting evidence under Rule 403 is subject to "harmless error review," and reversal is not warranted "unless there is a 'reasonable possibility that the improperly admitted evidence contributed to the conviction.'" *United States v. Williams*, 620 F.3d 483, 492 (5th Cir. 2010) (quoting *United States v. Mendoza–Medina*, 346 F.3d 121, 127 (5th Cir. 2003)).

Naidoo has not shown that the district court manifestly erred in finding that the risk of jury confusion caused by Naidoo's proffered expert testimony outweighed its probative value. The First Circuit has confronted a similar issue. *See United States v. Pires*, 642 F.3d 1 (1st Cir. 2011). The court recognized that, where the only issue is whether a defendant knowingly possessed child pornography, expert testimony on a defendant's sexuality, though possessing some probative value, has "diminished relevance." *Id.* at 11. Indeed, "[i]n enacting the federal child pornography statute, Congress proscribed certain conduct without regard to the underlying motive." *Id.*; *see*

No. 20-60730

*also United States v. Matthews*, 209 F.3d 338, 351 (4th Cir. 2000) (explaining that § 2252 does not require that "a defendant act[] with a bad motive or evil intent," such as to "satisfy some prurient interest"). Rather, 18 U.S.C. § 2252(a)(4)(B) prohibits an individual from "knowingly" possessing material containing a visual depiction of a minor engaging in sexually explicit conduct. The court further noted that "because of an expert's stature *qua* expert, jurors may assign more weight to expert testimony than it deserves." *Pires*, 642 F.3d at 12. Accordingly, expert testimony regarding the defendant's sexuality could "confuse the jury and divert its attention from the central question in the case"—whether the defendant knowingly possessed child pornography. *Pires*, 642 F.3d at 12.

Here, after considering the proffered testimony and performing the requisite balancing under Rule 403, the district court came to the same conclusion that the risk of jury confusion, in this particular case, outweighed the probative value of such evidence. Indeed, the district court reasoned that Naidoo's proffered testimony had "some relevance" since an individual would "presumably be less likely to knowingly possess child pornography if he is not sexually attracted to minors." The court found, however, that such probative value was limited in light of the requisite *mens rea* and expressed concern that the jurors would afford the expert testimony outsized weight. As in *Pires,* the court thus concluded that the expert testimony presented a special risk of jury confusion that substantially outweighed its probative value. Based on the foregoing, we cannot say that the district court's decision to exclude the relevant expert testimony was manifestly erroneous.

## B. Admission of Images and Videos of Child Pornography

Naidoo argues that the Government displayed an unnecessarily large volume of child pornography to the jury. Naidoo emphasizes that he offered to stipulate to the presence of child pornography on the relevant devices, and

contends that the Government needed only to prove that he possessed at least one image of child pornography on each of the three devices.

We previously confronted the admissibility of child pornography under Rule 403 in *United States v. Caldwell*, 586 F.3d 338, 342 (5th Cir. 2009). In that case, we explained that a defendant's stipulation "does not have the same evidentiary value as actually seeing the particular explicit conduct of the specific minors." *Id.* at 343; *see also Old Chief v. United States*, 519 U.S. 172, 183 (1997) ("[A] defendant's Rule 403 objection offering to concede a point generally cannot prevail over the Government's choice to offer evidence showing guilt and all the circumstances surrounding the offense."). Indeed, we reasoned that graphic evidence of child pornography "comes together with the remaining evidence to form a narrative to gain momentum to support jurors' inferences regarding the defendant's guilt." *Caldwell*, 586 F.3d at 343. Moreover, "[j]urors have expectations as to the narrative that will unfold in the courtroom," and "[i]f those expectations are not met, jurors may very well punish the party who disappoints by drawing a negative inference." *Id.*

Moreover, the use of representative samples of child pornography in these cases has been broadly upheld. *See United States v. Rodriguez*, 797 F. App'x 475, 480 (11th Cir. 2019) (collecting cases); *see also United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008) (explaining that part of the Government's "full presentation" of its case included "the presentation of a sample of images, and the expert's detailed description of how they were organized"). Accordingly, Naidoo's contention that the district court should have accepted his stipulation or limited the Government to displaying one

image per device is unavailing.[3]

There is no question that the pornography shown was a limited portion of the thousands of images and hundreds of videos for which Naidoo was held accountable. Moreover, it is clear that the number of images contributed to the narrative strength of the Government's case. In particular, an aspect of the Government's "overall narrative" entailed demonstrating links between the devices in Naidoo's possession by showing that some images appeared on more than one device. *Caldwell*, 586 F.3d at 343. The Government thus sought to rebut Naidoo's attempt to cast blame for the images on his wife and to establish Naidoo's knowledge—an issue which was not covered by Naidoo's proposed stipulation. *See, e.g.*, *id.* at 343 (noting that "the specific videos published . . . reflected how likely it was that the defendant knew that the video depicted child pornography (which knowledge the stipulation did not mention)").

Based on the foregoing, we find that the district court did not abuse its discretion by admitting into evidence the images and video clips of child pornography.

## C. Admission of Pornographic Stories

Naidoo argues that the district court erred in allowing the Government to introduce evidence that Naidoo's tablet device was used to visit a website containing written stories depicting minors involved in sexual

---

[3] Naidoo also takes issue with the Government's use of a video that it had determined was "extremely disturbing" and "one of the worst videos that the forensic examiner [had] ever encountered." Even assuming that the admission of this particular video was in error, that error was harmless in light of the overwhelming evidence of Naidoo's guilt. *See Mendoza-Medina*, 346 F.3d at 129 (finding erroneously admitted evidence to be harmless where the evidence against the defendant was "substantial"); *see also Williams*, 620 F.3d at 493 (declining to reverse error in applying Rule 403 "in light of the substantial evidence of [the defendant's] guilt presented at trial").

No. 20-60730

acts. Naidoo points out that the Government defended the Kristen stories as supporting that child pornography "was something [Naidoo] had interest in," and thus contends that the evidence was used for character propensity purposes in violation of Federal Rule of Evidence 404(b). For its part, the district court found that the stories went to Naidoo's "knowledge and intent" and thus admitted them.[4] Finally, Naidoo argues that the district court reversibly erred by failing to read the stories before admitting them into evidence.

Federal Rule of Evidence 404(b) prohibits the use of "[e]vidence of any other crime, wrong, or act" to prove "a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). However, it permits such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2).

This court applies a two-pronged inquiry to evaluate the admissibility of evidence under Rule 404(b):

> First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice

---

[4] Contrary to Naidoo's repeated assertions, the district court's decision did not run contrary to its pre-trial ruling barring both sides from introducing "expert testimony about the defendant's sexual predilections." The district court made this distinction clear when it explained that there was "a difference between a medical opinion and an actual visitation on a website." As the Kristen stories were not offered as "expert opinion" about Naidoo's sexual predilections, the district court's pre-trial ruling was not implicated.

> and must meet the other requirements of Rule
> 403.

*United States v. Grimes*, 244 F.3d 375, 384 (5th Cir. 2001) (quoting *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc)).

We have previously confronted the admission of pornographic narratives in a child pornography possession case. In *United States v. Grimes*, we held that pornographic stories involving minors were "highly relevant" to the charge of possession of child pornography and "would help show that the possession of the photographs was unlikely an accident when a person was also downloading narratives that involved sexual contact between adults and minors." 244 F.3d at 384 & n.18. However, we found reversible error on the second prong of the review outlined above. *Id.* at 385. Specifically, we found that the narratives were "of a different sexual nature from the photographs" and were "exceedingly prejudicial" because of their "inflammatory nature." *Id.* at 384–85. In particular, we noted that, while the admitted images "depict[ed] no violence," the stories were "vile in their graphic and violent nature." *Id.* at 385 (explaining that the narratives described "young girls in chains, a young girl in handcuffs, and references to blood").

This precedent makes clear that, with regard to the first prong of our review, the Kristen stories were relevant to an issue other than Naidoo's character. As this court has repeatedly held, even legal pornographic materials may "show that the possession of the [illegal] photographs was unlikely an accident." *Id.* at 384 n.18; *see also United States v. Layne*, 43 F.3d 127, 134 (5th Cir. 1995).

Moving to the second prong, Naidoo argues that the narratives in this case were unduly prejudicial because they depicted incestuous sexual activity involving minors and adults. However, Naidoo cannot show that the

narratives contained the kind of "exceedingly prejudicial" or "inflammatory" acts of violence that were at issue in *Grimes*. *Grimes*, 244 F.3d at 384. Indeed, subsequent to our decision in *Grimes*, we have explained that its ruling on the issue of prejudice was "the exception, not the rule" and emphasized that the narratives in that case "involved gruesome violence." *Caldwell*, 586 F.3d at 345. Nor does Naidoo attempt to argue that the narratives were more prejudicial or "of a different sexual nature from the photographs" that were admitted. *Grimes*, 244 F.3d at 385. Therefore, he has not shown that the prejudicial nature of the stories outweighed their probative value.

Moreover, the district court was careful to limit the amount of such evidence that was offered and included an appropriate instruction on the relevance of such evidence in the jury instructions.[5] *See Layne*, 43 F.3d at 134. Based on the foregoing, the district court did not abuse its discretion by admitting the two pornographic narratives.

## III.

Naidoo next raises challenges to multiple jury instructions given by the district court. Specifically, Naidoo objects to instructions regarding evidence of "similar acts" and the meaning of "on or about." "We review a district court's jury instructions for abuse of discretion." *United States v. Sila*, 978 F.3d 264, 267 (5th Cir. 2020). We "will not reverse if the court's charge, viewed in its entirety, is a correct statement of the law which clearly

---

[5] To the extent Naidoo challenges the district court's failure to inspect the narratives before admitting them into evidence, he identifies, at most, harmless error. Indeed, the case Naidoo relies upon found reversible error where the admitted stories were not only "depraved" and prejudicial but also "irrelevant." *United States v. Curtin*, 489 F.3d 935, 958 (9th Cir. 2007) (en banc). Assuming *arguendo* that the district court erred in failing to scrutinize the stories before their admission, any such error was harmless.

instructs jurors as to the relevant principles of law." *Id.* (quoting *United States v. Hernandez*, 92 F.3d 309, 311 (5th Cir. 1996)).

### A. Instruction Regarding "Similar Acts"

Naidoo argues that the jury should not have been instructed as to the purposes for which evidence of similar acts may be considered and contends that the instruction improperly directed the jury to consider the Kristen stories as similar acts relevant to his motive. Naidoo again argues that the district court's pre-trial ruling foreclosed any evidence related to his motive.

Naidoo has not shown that the district court abused its discretion by instructing the jury on the relevance of similar acts. Contrary to Naidoo's assertion, the instruction was indeed a principle of law "applicable to the factual issues confronting [the jury]." *United States v. Daniel*, 933 F.3d 370, 380 (5th Cir. 2019). Nothing in the district court's pre-trial order precluded such evidence from being introduced for a permissible purpose such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID.404(b)(2). Rather, the court merely barred both sides from offering "expert testimony about the defendant's sexual predilections" because of the risk of jury confusion. As explained *supra*, the district court did not act inconsistently with this ruling when it admitted the Kristen stories, and it did not err when instructing the jury on the limited purposes for which such extrinsic evidence can be considered.

### B. Instruction Regarding "On or About"

Next, Naidoo argues that the district court erred in responding to a jury question regarding the dates specified in Count Two of the superseding indictment. Count Two charged Naidoo with possession of the Lexar SD card containing child pornography "on or about July 10, 2017." In his closing argument, Naidoo's counsel argued that the jury should acquit Naidoo on

this count because the evidence showed that Naidoo was hundreds of miles away from the SD card on July 10. Naidoo emphasizes that this argument prompted the Government to respond in its rebuttal argument by citing evidence that Naidoo used the device as early as December 2015. The jury subsequently sent a note to the court asking: "Are we considering the verdict based on the dates on the indictment?" The court instructed the jury, over the objection of defense counsel, on the meaning of the phrase "on or about" in the superseding indictment, explaining that "[t]he government does not have to prove that the crime was committed on that exact date, so long as the government proves beyond a reasonable doubt that the defendant committed the crimes on a date reasonably near the date stated in the indictment." Now, Naidoo claims that his trial counsel "exposed a fatal flaw in . . . count two," the flaw was "recognized by the jury," and the court's instruction "resurrected the count." We disagree.

A district court enjoys "wide latitude in deciding how to respond to questions from a jury." *United States v. Hale*, 685 F.3d 522, 544 (5th Cir. 2012) (quoting *United States v. Cantu*, 185 F.3d 298, 305 (5th Cir. 1999)). "Supplemental instructions must be 'reasonably responsive' and 'allow[] the jury to understand the issue presented to it.'" *Id.* (quoting *United States v. Mann*, 161 F.3d 840, 864 (5th Cir. 1998)). Naidoo's argument is apparently premised on the mistaken impression that his trial counsel exposed a flaw in the Government's case by misstating the terms of the superseding indictment. While counsel stated that Naidoo was charged with possession of the Lexar SD card "on July 10, 2017," the indictment actually charged him with possession "on or about July 10, 2017." Far from fixing a mistake committed by the Government in drafting the superseding indictment, the district court's instruction merely explained the meaning of "on or about." *See* Pattern Jury Instr. 5th Cir. 1.19 (2019) ("On or about"); *see also* Fed. R. Crim. P. 30(c) ("The court may instruct the jury before or

after the arguments are completed, or at both times."). Indeed, the district court made clear that it was correcting its own mistake in not previously including the instruction. The instruction was thus "reasonably responsive" to the jury's question regarding the significance of the dates in the superseding indictment, and we find no error. *Hale*, 685 F.3d at 544.

## IV.

Finally, Naidoo raises several challenges to his sentencing. First, Naidoo contends that Counts One and Two of the superseding indictment are multiplicitous.[6] Naidoo also argues that the district court imposed an unreasonable sentence by failing to reject Guidelines enhancements, failing to avoid sentencing disparities, and imposing a condition of supervised release unreasonably restricting access to the Internet. We address each argument in turn.

### A. Multiplicity of Counts One and Two

Naidoo argues that Counts One and Two of the superseding indictment are multiplicitous as they charge possession of child pornography on overlapping dates.[7] The Government responds by pointing out that, notwithstanding the overlap, Count One charged Naidoo with possession across a range of dates and argues that the evidence at trial showed that the pornography had been placed on the relevant devices at different dates. The

---

[6] Naidoo attempts to raise this issue both as a standalone argument and as a separate challenge to his sentence. However, because the issue of multiplicity was only raised at sentencing and not in a pre-trial motion, Naidoo has only preserved a complaint about the multiplicity of his sentences rather than the multiplicity of the indictment. *See United States v. Galvan*, 949 F.2d 777, 781 (5th Cir. 1991).

[7] In response to Naidoo's multiplicity-based objection at sentencing, the district court stated that it did not see the issue as relevant to its Guidelines calculations and thus overruled the objection.

No. 20-60730

Government further contends that the relevant *actus reus* was Naidoo's possession of two distinct SD cards charged in each count.

The Double Jeopardy Clause of the Fifth Amendment protects individuals against multiple criminal punishments for the same offense. U.S. CONST. amend. V. An indictment is "multiplicitous," and in violation of the Double Jeopardy Clause, "if it charges a single offense in separate counts." *United States v. Woerner*, 709 F.3d 527, 538 (5th Cir. 2013). As relevant here, one type of multiplicity challenge may arise "when charges for multiple violations of the same statute are predicated on arguably the same criminal conduct." *Id.* at 539. In such a case, we inquire "whether separate and distinct prohibited acts, made punishable by law, have been committed." *Id.* (quoting *United States v. Planck*, 493 F.3d 501, 503 (5th Cir. 2007)). The relevant test has two steps: "[f]irst, we look to the statute charged to ascertain the 'allowable unit of prosecution,' or the *actus reus* of the crime." *Id.* (quoting *United States v. Reedy*, 304 F.3d 358, 365 (5th Cir. 2002)). "Congress's intent is paramount on this point: the legislature may castigate a particular act by exposing the actor to several prosecutions and punishments, or it may specify that the act should only be subject to a single unit of prosecution." *Id.* at 539–40 (quoting *United States v. Chiaradio*, 684 F.3d 265, 272 (1st Cir. 2012)). Second, we review "the evidence to see how many distinct criminal acts the defendant committed." *Id.* at 540. We review a trial court's rulings on multiplicity challenges de novo. *Id.* at 538.

Turning to the allowable unit of prosecution under 18 U.S.C. § 2252(a)(4)(B), it must first be noted that the Government's argument relies on caselaw analyzing an entirely distinct provision, 18 U.S.C. § 2252A(a)(5)(B). We have indeed held that under § 2252A(a)(5)(B), which prohibits possession of "any" material containing images of child pornography, the allowable unit of prosecution is "each 'material,' or medium, containing an image of child pornography." *Id.* at 540 (citing

*Planck*, 493 F.3d at 504). However, that is not the provision under which Naidoo was charged. Rather, he was charged under 18 U.S.C. § 2252(a)(4)(B), which prohibits the possession of "1 or more" matters containing child pornography. This and other circuits have consistently held that § 2252(a)(4)(B)'s use of the phrase "1 or more" dictates that the simultaneous possession of multiple images of or matters containing child pornography constitutes a single violation of the statute.[8] Put simply, each separate SD card containing offending images is not a distinct allowable unit of prosecution under § 2252(a)(4)(B). *See Chiaradio*, 684 F.3d at 274–75 ("[T]he defendant may have possessed two 'matters' (i.e., two computers) that collectively contained thousands of images, but his simultaneous possession of 'one or more' matters transgressed the statute only once.").

The Government's attempts to distinguish this clear precedent are unavailing. First, notwithstanding the range of dates included in Count One, both counts plainly alleged simultaneous possession of child pornography on or about July 10, 2017. Next, the separate acts of transferring images onto the

---

[8] *See United States v. Chilaca*, 909 F.3d 289, 295 (9th Cir. 2018) ("We, like all other circuits that have considered the issue, interpret § 2252(a)(4)(B)'s use of the phrase '1 or more' to mean that the simultaneous possession of different matters containing offending images at a single time and place constitutes a single violation of the statute."); *United States v. Emly*, 747 F.3d 974, 979–80 (8th Cir. 2014) (finding three possession counts to be multiplicitous where defendant simultaneously possessed images on three separate devices); *Chiaradio*, 684 F.3d at 276 (holding that "the defendant's unlawful possession of a multitude of files on two interlinked computers located in separate rooms within the same dwelling gave rise to only a single count of unlawful possession under section 2252(a)(4)(B)"); *United States v. Polouizzi*, 564 F.3d 142, 155 (2d Cir. 2009) (holding that "Congress intended to subject a person who simultaneously possesses multiple . . . matter[s] containing a visual depiction of child pornography to only one conviction under 18 U.S.C. § 2252(a)(4)(B)"); *United States v. Kimbrough*, 69 F.3d 723, 730 (5th Cir. 1995) (analyzing predecessor statute and finding that similar language "indicate[d] that the legislature did not intend for this statute to be used to charge multiple offenses" where the defendant was alleged to have possessed multiple images on or about the same date).

SD cards do not constitute separate violations of the statute. We have held that multiplicitous convictions for possessing a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) do not violate the Double Jeopardy Clause "[i]f the record establishes that the defendant obtained the firearm and ammunition on different occasions." *United States v. Sanchez*, 675 F. App'x 433, 436 (5th Cir. 2017). However, even assuming that the same rationale may apply in the § 2252(a)(4)(B) context, the Government cites no evidence that the pornography on the relevant devices was obtained at different times. And, as the Eighth Circuit has persuasively explained, the mere "act of copying or transferring files onto different devices in itself does not constitute an independent violation of the statute." *Emly*, 747 F.3d at 979; *see also Chiaradio*, 684 F.3d at 275 ("If a defendant had multiple photo albums of images in his bedroom and living room and periodically swapped images between them, two convictions—one for each album—would not stand."). Indeed, in this case, the Government's evidence revealed not only that both devices contained images that were also found on Naidoo's HP laptop, but also that child pornography was accessed on both devices years before the November 2016 date relied on by the Government.

Having concluded that Counts One and Two of the superseding indictment are multiplicitous, we turn to the appropriate remedy. As Naidoo's terms of imprisonment and periods of supervised release for each count were ordered to run concurrently, our focus is on the monetary assessments Naidoo was ordered to pay per count. "Where it is clear that the dual convictions did not lead the district court to impose a harsher sentence," we may simply modify the judgment to limit the monetary assessments paid rather than remanding for resentencing. *See United States v. Boston*, 186 F. App'x 504, 506–07 (5th Cir. 2006); *see also United States v. Thomas*, 690 F.3d 358, 372 (5th Cir. 2012). In this case, the district court made clear that, regardless of any potential error in its rulings at sentencing—including its

rejection of Naidoo's multiplicity-based challenge—it "would have imposed the identical sentence." Accordingly, rather than remand for resentencing, we vacate Naidoo's Count Two conviction and sentence and modify the district court's judgment to impose only a $200 special assessment and a $10,000 assessment under the JVTA.

### B. Reasonableness of Naidoo's Sentence

Naidoo raises challenges both to the procedural and substantive reasonableness of his sentence, arguing that the district court failed to exercise its discretion to reject Guidelines enhancements, did not avoid unwarranted disparities as required by 18 U.S.C. § 3553(a)(6), and imposed an unreasonable condition of supervised release limiting his Internet-use.

We engage in a bifurcated review of a sentence: first examining "whether the district court committed any significant procedural error," and then considering "the substantive reasonableness of the sentence." *United States v. Nguyen*, 854 F.3d 276, 280 (5th Cir. 2017). In reviewing the procedural reasonableness of a sentence, we review the district court's "interpretation and application of the Sentencing Guidelines de novo and its findings of fact for clear error." *Id.* Significant procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). We then review a sentence's substantive reasonableness for abuse of discretion. *See Nguyen*, 854 F.3d at 283. "A discretionary sentence imposed within a properly calculated guidelines range is presumptively reasonable." *United States v. Campos-Maldonado*, 531 F.3d 337, 338 (5th Cir. 2008). That presumption may be rebutted "only upon a showing that the sentence does not account for a factor that should receive significant weight,

it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009) (citing *United States v. Nikonova*, 480 F.3d 371, 376 (5th Cir. 2007)).

### 1. Guidelines Enhancements

Naidoo's first challenge is to the procedural reasonableness of his sentence. Naidoo argues that the district court improperly treated the Guidelines as mandatory and should have exercised its discretion to reject enhancements provided under U.S.S.G. § 2G2.2 for child pornography offenses. Naidoo relies on a decision of the Second Circuit, *United States v. Dorvee*, in which the court found that the enhancements provided under § 2G2.2 were "irrational[]" and directed district courts to "take seriously the broad discretion they possess in fashioning sentences under § 2G2.2" because those Guidelines were not developed using an "empirical approach." 616 F. 3d 174, 184, 187–88 (2d Cir. 2010). However, as Naidoo concedes, we have already considered *Dorvee*'s reasoning and refused to "reject a Guidelines provision as 'unreasonable' or 'irrational' simply because it is not based on empirical data and even if it leads to some disparities in sentencing." *United States v. Miller*, 665 F.3d 114, 121 (5th Cir. 2011). As we explained, "[t]he Guidelines remain the Guidelines, and district courts must take them into account." *Id.* at 123.

Moreover, the record does not support that the district court treated the Guidelines as mandatory. The district court repeatedly articulated its understanding that the Guidelines are merely advisory. And there is no error in the district court's statement that it "need[ed] to apply the sentencing guidelines as they have been given to me." Though the Guidelines are advisory only, district courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264

(2005); *see also Kimbrough v. United States*, 552 U.S. 85, 91 (2007) ("A district judge must include the Guidelines range in the array of factors warranting consideration."); *Miller*, 665 F.3d at 121 ("Empirically based or not, the Guidelines remain the Guidelines. It is for the Commission to alter or amend them.").

## 2. District Court's Application of 18 U.S.C. § 3553(a)(6)

Naidoo's next challenge is to the substantive reasonableness of his sentence. Naidoo argues that the court failed to avoid unwarranted disparities as required by 18 U.S.C. § 3553(a)(6). Naidoo recites national statistics demonstrating the low percentage of defendants sentenced under § 2G2.2 who received a sentence within the Guidelines range and showing that the average sentence for possessing child pornography without a mandatory minimum sentence is less than half his own. Naidoo further argues that his sentence is "unfairly comparable to defendants who committed far more egregious conduct."

Naidoo has failed to rebut the presumption of reasonableness that is afforded to his within-Guidelines sentence. First, "avoiding unwarranted general sentencing disparities is not a factor that we grant significant weight where the sentence is within the Guidelines range." *United States v. Diaz*, 637 F.3d 592, 604 (5th Cir. 2011). Further, we have held that "[n]ational averages of sentences" with "no details underlying the sentences are unreliable to determine unwarranted disparity." *United States v. Willingham*, 497 F.3d 541, 544 (5th Cir. 2007). Indeed, where averages "only reflect a broad grouping of sentences imposed on a broad grouping of criminal defendants," they are "basically meaningless in considering whether a disparity with respect to a particular defendant is warranted or unwarranted." *Id.* at 544–45. Accordingly, Naidoo's arguments based on broad nationwide statistics are irrelevant. Finally, his attempted comparisons

to defendants convicted of other offenses do not demonstrate a disparity between "similarly situated" defendants. *United States v. Cedillo-Narvaez*, 761 F.3d 397, 406 (5th Cir. 2014).

### 3. Condition of Supervised Release

Naidoo's challenge to his condition of supervised release is also a challenge to the substantive reasonableness of his sentence. *See, e.g.*, *United States v. Becerra*, 835 F. App'x 751, 755 (5th Cir. 2021) (reviewing a similar objection as a challenge to the substantive reasonableness of a sentence). Naidoo argues that the condition of supervised release which requires him to seek permission from a Probation Officer prior to using any Internet-capable device should be modified to permit him to use the Internet without seeking permission before every use. We have indeed found similar conditions to be "unreasonably restrictive" to the extent they require the defendant "to request permission every time he needs to use a computer, or every time he needs to access the Internet." *United States v. Sealed Juvenile*, 781 F.3d 747, 756 (5th Cir. 2015). Accordingly, we affirm the condition of supervised release subject to our interpretation that individual approval is not required every single time Naidoo must use a computer or access the Internet. *Id.* at 757; *see also United States v. Melton*, 753 F. App'x 283, 289 (5th Cir. 2018).

### V.

Based on the foregoing, we VACATE Naidoo's Count Two conviction and sentence under 18 U.S.C. § 2252(a)(4)(B) and (b)(2), and MODIFY the district court's judgment to impose only a $200 special assessment and a $10,000 assessment under the JVTA. Any money paid by Naidoo in satisfaction of the assessments ordered on Count Two should be refunded. In all other respects, we AFFIRM.